W. L. BARRETT, Plaintiff and Respondent v. KEITH C.
MORTON and HELEN M. MORTON, his wife, Defendants
and Appellants.

No. 9976.
Submitted February 11, 1960. Decided April 27, 1960.
351 P.2d 601.

William B. Sherman, Conrad, for appellants.

William B. Sherman argued orally for appellants.

R. F. Clary, Jr., Great Falls, for respondent.

R. F. Clary, Jr. argued orally for respondent.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This is an action to recover on a promissory note and to foreclose a mortgage on real and personal property given to secure its payment.

The complaint alleges execution and delivery of two notes on October 7, 1953, by defendants to The First National Bank of Browning, each in the principal sum of $7,000 with interest at 7 percent per annum; that the unpaid portion of the indebtedness was from time to time extended and evidenced by renewal notes; that the unpaid balance of the indebtedness was evidenced by the note involved in this action executed June 2, 1955. It was made payable on or before September 1, 1955, and was in the sum of $10,245.51, with interest at 7 percent per annum; to secure its payment a mortgage was executed upon the real and personal property described in the com-

plaint; that the note was sold and assigned, before maturity and for valuable consideration, to plaintiff, who is the lawful owner and holder thereof; that at the time of the commencement of the action there was due and owing from the defendants upon the note and mortgage the sum of $9,457.56, principal, and $356.49, interest. Defendants' general demurrer to the complaint was overruled; they failed to file an answer within the time allowed, and their default was duly entered on May 2, 1956.

. The court heard evidence by the plaintiff and entered a decree of foreclosure and sale on May 25.

Thereafter defendants changed counsel who filed a motion to set aside the default judgment and sought leave to file an answer. This motion was granted on August 27.

Separate answers were thereupon filed by each defendant. The answer of defendant, Helen Morton, contained a general denial and an alleged affirmative defense in which it was alleged that the mortgage was not in default; that the balance due was not accelerated by notice and there was no demand made for the full amount of the note and mortgage; that regular payments had been made and were being made on the mortgage under an arrangement between plaintiff and defendants whereby regular payments were being accepted and "plaintiff was at the time of the default and default judgment entitled to said payment and in all likelihood was and is now regularly receiving said payments on the said note and mortgage."

The answer of defendant, Keith Morton, also contained a general denial and an alleged affirmative defense or counterclaim which contained the same allegations as the answer of Helen Morton and alleged in addition that plaintiff and defendant, Keith Morton, were both interested in a joint venture concerning oil and gas leases and drilling operations; that the note and mortgage in question here were taken by assignment to plaintiff in furtherance of the joint venture; that the

mortgage was to be taken by assignment by plaintiff to prevent the sale of the drilling rig which is security for the note and mortgage. It also alleged that the ''sale was necessary to defendant and which he desires in order to apply the proceeds in liquidation of the said note and mortgage''; that pursuant to the agreement that the drilling would continue if defendant did not sell the drilling rig as he desired, the continued drilling would be to the mutual benefit of plaintiff and defendant; that the note and mortgage are held in trust for the benefit of plaintiff and defendant as joint venturers and because thereof plaintiff is estopped from foreclosing the mortgage until the trust is terminated; that defendants are entitled to credit for the benefits received by plaintiff from the use of the drilling rig, which benefits are alleged to be reasonably worth $13,773.33, none of which has been paid.

On motion of plaintiff, the court struck from the answer of Helen Morton all of the affirmative defense and the corresponding allegations in the answer of Keith Morton as well as most of the other allegations in the answer and counterclaim of defendant, Keith Morton.

He was granted leave to file an amended answer within a specified time and failing in this his default was entered. His counsel having given notice of withdrawal, defendant made a motion pro se, to set aside the default as having been taken against him through surprise. This motion was filed on February 4, 1957. Defendant was represented by new counsel at the hearing on the motion, and the motion was denied on April 11, 1957. Hearing was had on October 25, 1957, at which all parties were represented by counsel.

Defendant, Helen Morton, asked leave to amend her answer and tendered a proposed amended answer the terms of which need not be alluded to further than to say that it was of the same general tenor as that of defendant, Keith Morton, much of which had been stricken as above noted. It further alleged in substance that, when the note in question

was executed, defendant had an immediate sale of the drilling rig and could have sold it for $15,000 but was dissuaded from so doing by plaintiff in order that drilling might be continued in the joint enterprise; that plaintiff has accepted numerous payments from the sale of oil some of which have been accepted since the commencement of this action and that he should be and is barred from prosecuting this action.

The motion of Helen Morton for leave to file an amended answer was denied.

After trial to the court without a jury, and in which counsel for both parties participated and introduced evidence from the three parties to this action as witnesses and others, the court made findings of fact in favor of plaintiff and entered judgment for plaintiff in the sum of $9,436.90 together with interest at the rate of 7 percent from January 21, 1957. It allowed plaintiff an attorney fee of $1,000 and entered judgment of foreclosure of the mortgage.

Defendants have appealed from the judgment. The first point raised by defendants is that the complaint does not state facts sufficient to constitute a cause of action, and hence, that the court should have sustained their demurrer thereto. Specifically they contend that it fails to allege a demand for payment and nonpayment of the note.

█ It is not necessary to make demand upon the maker of a promissory note for payment before an action is instituted. R.C.M. 1947, § 55-701. Quickenden v. Hulbert, 83 Mont. 501, 510, 272 P. 994; 10 C.J.S., Bills and Notes, § 344.

██ As to nonpayment, the complaint alleges that a stated amount was due and owing. That is a sufficient allegation of nonpayment, for obviously the amount could not be due and owing if it had already been paid. Likewise, at the trial where all three parties testified, it was shown without dispute that the indebtedness had not been paid and under such circumstances the complaint, if insufficient, will be deemed amended to conform to the uncontradicted proof.

Defendants predicate error upon the court's refusal to set aside the default of defendant, Keith Morton.

Specifically, it is contended that it was not proper to enter his default when he had an answer on file which contained a general denial. As a general proposition this contention has merit, but there are circumstances involved in this case which make the rule inapplicable.

Here, after denying execution and delivery of the note, defendants, by way of affirmative defense in legal effect, admit execution and delivery of the note and mortgage, but allege that there was no default in payment, since there was no notice of acceleration given making the full amount of the note and mortgage due and payable.

The rule is that, "Where * * * the contract is denied, and later on admitted, the admission is controlling, and the general denial should be disregarded." Downs v. Nihill, 87 Mont. 145, 286 P. 410, 412.

Defendant, Keith Morton, failed to file an amended answer within the time allowed after the motion to strike and special demurrer were sustained, and hence, his default was properly entered. There was no error on the part of the court in refusing to set it aside.

Nor was it error, as contended by defendant, for the clerk, rather than the judge, to enter the default where, as here, the judicial function was exercised by the judge who heard the evidence before the actual entry of judgment. The case of Soliri v. Fasso, 56 Mont. 400, 185 P. 322, is inapplicable here since the judge and not the clerk entered the judgment.

Defendants predicate error upon the ruling of the court in striking the affirmative defenses, in refusing evidence thereunder, and in refusing leave for Mrs. Morton to file an amended answer. The court did not err in these respects.

At the trial, the court allowed evidence of the matters sought to be pleaded to be introduced, subject to it being ruled out when the case was finally submitted. This evidence tended to show

that plaintiff and defendant, Keith Morton, and a man by the name of Spring entered into an oral agreement for the joint operation of oil leases as set forth in the answer of Keith Morton.

The evidence of defendants also supported the other allegations stricken from the answer. No useful purpose would be subserved in here setting out what evidence was there introduced. It is sufficient to say that it supported the allegations stricken as above stated.

The evidence shows also that defendants have an action pending in Conrad involving the joint enterprise agreement. Before entering judgment for plaintiff, the court ruled that such evidence was not within the issues tendered by the pleadings and therefore sustained the objection thereto and disregarded the evidence in its ruling. The court was right in its ruling that such evidence was not relevant to the issues tendered by the pleadings nor was it relevant to issues properly presented in a suit on the note and mortgage. It related to a separate and independent transaction.

The allegations that the mortgage was not in default because no notice of acceleration or demand for the full amount of the note and mortgage was given was obviously irrelevant because the mortgage did not contain an acceleration clause and likewise the note was overdue when the action was commenced and no acceleration was necessary.

Likewise the court might have excluded the evidence relating to the joint venture, none of which was in writing, as being designed to alter or vary the terms of a written agreement contrary to sections 93-401-13 and 13-907.

There was, however, one bit of evidence not objectionable under these statutory provisions and that was exhibit No. 4 of defendant.

That was an assignment of proceeds from the sale of oil and was executed June 4, 1955. It was made by defendants to plaintiff Barrett and covered the proceeds from the sale of oil from

certain described 80 acres of land. In part, and so far as material here, that assignment provided:

"This Assignment is made to Assignee as security for any and all indebtedness now owing or hereafter incurred by Assignors to Assignee, and this Assignment shall remain in force and effect as long as Assignors shall be indebted to the said Assignee, W. L. Barrett, c/o The First National Bank, Great Falls, Montana, and said Assignee is hereby authorized to receive payments for all oil produced and sold from the above described premises, and receipt for same on behalf of said Assignors."

This, it will be noted, was executed two days after the note in suit here was executed. The assignment shows on its face that it was given to Barrett as security "for any and all indebtedness now owing or hereafter incurred by Assignors to Assignee".

The note, here sued on, was made payable to the First National Bank of Browning. The record does not disclose when Barrett became the owner and holder of the note.

Whether the assignment was intended to secure the indebtedness, represented by the note, is involved in some uncertainty. If Barrett was the holder of the note when the assignment, Exhibit No. 4, was made, there is still some doubt whether it would have been affected. It should be noted that Exhibit No. 4 does not expressly refer to the note and mortgage here involved.

Had it been the intention of the parties to extend the due date of the note, or to postpone foreclosure of the mortgage, so long as some payments were applied on the note, it seems that some reference thereto would have been expressly made. However, conceding that whatever net sums were paid under the assignment should be applied on the indebtedness represented by the note, that fact would not affect the outcome of this action.

The assignment, under the evidence in the record, is of no help to defendants because plaintiff and his witness, Mr. Clary, who had charge of the funds derived from the assignment made

it clear that after giving defendants credit for the money paid to plaintiff by virtue of the assignment, and after making allowances for the expenses paid by plaintiff in connection with the drilling operations there was due to plaintiff the sum of $9,-436.90, which is the amount fixed by the court. In fact there was evidence by Mr. Clary which would have warranted a judgment for $9,727.76.

Defendants, though allowed to testify fully regarding the joint venture agreement, did not dispute the item of $9,436.90 in any way except that they contend they have a counterclaim that exceeds that amount, but this is involved in the action pending in Pondera County. They offered no proof that Mr. Clary did not give them all the credits for payments from oil production to which they were entitled.

There was no reversible or prejudicial error in disregarding the evidence relating to the joint venture as was done by the trial court.

Other contentions of defendants have been considered but we find no reversible error in the record. The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR and CASTLES concur.